UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA,          :

                                            :     **MEMORANDUM OF LAW**
      -V-                                             07 CR 406 (RJS)

                                            :
ANNE HALL,

                                            :
              Defendant.
---------------------------------------------------------X

## I. SEVERANCE

### STATEMENT OF FACTS

Defendant Anne Hall is charged in one count of a five count indictment in which her husband, Clyde W. Hall, is charged in each of the five counts. Count Five charges Clyde W. Hall and Anne Hall as co-conspirators in a conspiracy to commit bankruptcy fraud in violation of Title 18 U.S.C. Section 371. It is alleged that Anne Hall made false statements in connection with the filing of the bankruptcy petition. In addition to the bankruptcy count and the other four counts in which only Clyde W. Hall is named, there is a forfeiture allegation which, although it indicates that the "defendants shall forfeit…", only relates to the first four counts of the indictment in which Anne Hall is not named.

The first four counts of the indictment charge Clyde W. Hall with conspiracy to commit wire fraud and substantive wire fraud. It is alleged that defendant Clyde W. Hall and his co-conspirators devised and operated an "advance fee" scheme to obtain millions of dollars from individuals and businesses through fraud. Further, the overt acts listed in the indictment detail numerous instances of wire transfers made by certain individuals to accounts ostensibly under the control of defendant Clyde W. Hall. Also, it is alleged that Clyde W. Hall caused various trusts to be established, which were then used in connection with the fraud and for the benefit of Clyde W. Hall and others.

POINT I

## THE TRIAL OF ANNE HALL MUST BE SEVERED FROM THE TRIAL OF HER CO-DEFENDANT CLYDE W. HALL

Ms. Hall submits that the Court should sever her trial, on Count Five, from the trial of her co-defendant Clyde W. Hall, who is named in all five counts of the indictment. This is so, because the first four counts of the indictment allege a sophisticated "advance fee" scheme to defraud which will lead to the introduction, at trial, of volumes of documents, as well as tape recorded conversations relating only to those counts and the defendant Clyde W. Hall. This evidence, which will undoubtedly lay out a sophisticated scheme involving millions of dollars in fees and offered benefits, as well as evidence of trusts created to secrete the profits from the scheme, would not be admissible against Ms. Hall either in a trial in which she is joined with her husband, Clyde W. Hall, or in a separate trial. However, if she is tried with her husband and the evidence is introduced against him, even with a strong instruction from the court regarding the use of such evidence against Anne Hall, it will result in prejudicial spillover and deny Ms. Hall her rights to a fair trial under the Sixth Amendment to the United States Constitution. See, e.g., *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); citing *United States v. Cervone*, 907 F.2d 332, 341-2 (2d Cir. 1990). ("'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes part of his trial solely due to the presence of co-defendants as to whom its admission is proper.").

In addition to the evidence against co-defendant Clyde W. Hall already known to counsel, statements made by the government during the pendency of this case suggest that it is also likely that evidence regarding additional "advance fee" schemes may be offered against defendant Clyde W. Hall pursuant to Rule 404(b) of the Fed. R. Crim. Proc.. Although defendant Anne Hall does not simply rely upon that type of evidence as the basis for her motion, such evidence, if offered by the government, would only compound the spillover prejudice already created by a joint trial with her co-defendant husband.

While most severance motions are filed in cases in which the moving defendant is charged in the same principal counts as a co-defendant but argues that there is far less evidence against him, that is not the case here. In those instances where the quantity and strength of the

14

evidence is at issue courts have adhered to the general rule that "(T)here is a preference in the federal system for joint trials of defendant's who are indicted together." *Zafiro v. United States*, 506 U.S. 534,537, 122 L. Ed. 2d 317, 113 S. Ct.933 (1993). *United States v. Hernandez*, 85 F. 3d 1023, 1029 (2d Cir. 1996). Here, however, unlike most severance situations, the defendant Anne Hall is charged in only one of five courts and, that count, at least as to Anne Hall, is unrelated to the other four counts which charge Clyde W. Hall in the "advance fee" scheme. Therefore since the admissible evidence against Anne Hall is circumscribed by the limitations of count five, the predominant factor regarding prejudicial spillover, i.e. the "extent the evidence presented at a joint trial would have been admitted at a single-defendant trial ...", *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir. 1990); see also *United States v. Romero*, 54 F. 3d 56, 60 (2d Cir. 1995), weighs in her favor.

Further, because of the husband and wife relationship, the prejudicial spill over will be heightened as against Ms. Hall. It is logical that if a jury were to conclude that the evidence against Clyde W. Hall on counts one through four was sufficient for conviction, it will have a negative impact on the far less sophisticated bankruptcy fraud alleged in count five. Because Clyde W. Hall may suffer the consequences of such a negative effect since he is named in all counts, Anne Hall should not be placed in a position to suffer such consequences since a severance of Ms. Hall will cause little additional trial time and insure her rights to a fair trial.

## II. DEFENDANT'S REQUEST FOR DISCOVERY SHOULD BE GRANTED

The Supreme Court has emphasized the liberal policy of discovery now underlying the Federal Rules of Criminal Procedure, especially as amended in 1966 and 1975. The Court has stated:

> [There is a] growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice. . . . It is also reflected in the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous of the civil practice. **Dennis v. United States**, 384 U.S. 55, 870-71 (1966).

15

The extent to which pre-trial discovery should be permitted in criminal cases is a complex and controversial issue. The problems have been explored in detail in recent legal literature, most of which has been in favor of increasing the range of permissible discovery. The rule has been revised to expand the scope of pretrial discovery.

See, generally, 8J. Moore, **Federal Practice**, §16.03; Rezneck, **The New Federal Rules of Criminal Procedure**, 54 Geo. L.J. 1276 (1966); **Proceedings of the Judicial Conference of the Third Circuit**, 42 F.R.D. 437, 576-79 (1966); Proceedings of the Judicial Conference of the Second Circuit, **Symposium-Discovery in Criminal Cases**, 44 F.R.D. 481 (1968).

In 1974, the Supreme Court proposed further revisions in Rule 16 to provide even greater discovery. The Advisory Committee expressed the view that:

> Broad discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence. 62 F.R.D. 271, 307-08 (1974).

This enlarged discovery policy was accepted by Congress in 1975, when it enacted present Rule 16, Act of July 31, 1975, Pub. L. No. 94-64, 94th Cong., 1st. Sess.

### III. Defendant's Request for Evidence of "Other Crimes", including any Prior or Subsequent Misconduct or Bad Act or Crime, as to the Defendant, Co-Defendants, and any Co-Conspirator should be Granted.

The defendant has no knowledge of the identity of grand jury witnesses who testified against him. Likewise, he has no knowledge of the witnesses who were interviewed in connection with this continuing investigation.

The defendant is in a position where he has no knowledge of who he may be facing at trial, whose statements he would be entitled to rebut under Rule 806, and of what conduct he may

16

have to defend against. Cf. **United States v. LeRoy**, 687 F.2d 610, 618-19 (2d Cir. 1982), cert. denied, 459 U.S. 1174, 103 S. Ct. 823. Furthermore, the defendant is entitled to be furnished with a list of any prior acts that the government wishes to introduce under Rule 404(b) of the Federal Rules of Evidence.

> Rule 404(b) was amended with the addition of the following text:
>
> provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general rule of any such evidence it intends to introduce at trial.
>
> House Doc. 102-76 (1991) at 2, 4.

The Advisory Committee note indicates that the revision puts the rule in the "mainstream" with notice and disclosure requirements of other rules, e.g., Rule 412 (written motion of intent to offer evidence under rule), Rule 609 (written notice of intent to offer conviction older than 10 years), and Rules 803 (24) and 804(b)(5) (notice of intent to use residual hearsay exceptions). The note further states that the pre-trial notice requirement is to promote early resolution of admissibility issues and reduce surprise.

Consequently, the materials sought in this request are within the scope of Brady as well as Rules 403, 404 and 609 of the Federal Rules of Evidence.

> **Request for All Hearsay Statements and Statements Admissible Under Rule 801 (d) (2) © (D), or (E), Federal Rules of Evidence, Together with All Impeachment Materials of the <u>Declarant of Those Statements</u>**

Rule 806, Fed. R. Evid., provides as follows:

> When a hearsay statement, or a statement defined in Rule 801(d)(2), ©, (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not

17

> subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.

The Advisory Committee's Note to Rule 806 begins with the plain rationale behind the Rule: "The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment. . . ." See also, **United States v. Check**, 582 F.2d 668, 694 n.44 (2d Cir. 1978).

The applicability of Rule 806 was commented upon in **United States v. LeChoco**, 542 F.2d 84 (D.C. Cir. 1976). In **LeChoco**, the defendant proffered an insanity defense through three psychiatrists who had interviewed him prior to trial. The defendant, however, did not take the stand. Nonetheless, the hearsay exception of Fed. R. Evid. Rule 803(4), "Statements for Purposes of Medical Diagnosis or Treatment," permitted defense counsel to elicit, during the testimony of the doctors, what had been told to them by the defendant. Naturally, and quite properly, the prosecution attempted to discredit the psychiatric defense by discrediting the truthfulness of the defendant's statements to the doctors. The Court in **Lechoco** approved that procedure (542 F.2d at 89 n.6):

> The defendant's statements to his psychiatrist fall within the statement to a physician exception to the hearsay rule embodied in Rule 803(4). As such, Mr. Lechoco's credibility was open to attack under Rule 806. The prosecutor's vigorous cross-examination represents the type of attack on credibility contemplated by the term "otherwise" as contained in Rule 608(a).

Similarly, in **United States v. Driscoll**, 445 F.Supp. 864 (D.N.J. 1978), where the government faced the prospect that apparently exculpatory grand jury testimony of co-conspirator Tecott, who died before indictment, would be used by the defense, the Court observed that, under Rule 806 (445 F. Supp. at 867): "[s]ince one or the other part of the Tecott testimony may tend to exculpate himself, or otherwise may raise a doubt on some part of the evidence for the United

18

States, Tecott's credibility may be open to attack. . . . "

Therefore, since the defendant intends to exercise his right to impeach the credibility of the declarant of any and all out-of-court statements which the government will seek to introduce at trial, the government should be required to disclose any hearsay statements or statements admissible under Rule 801(d)(2), ©, (D), or (E).

Moreover, if the government will seek to offer proof against the defendant by introducing the declarations of non-witnesses, the defendant must be permitted to impeach the credibility of those declarants as if they were witnesses at trial. In order to make that right to impeach meaningful, the government is obliged, under the rule of **Brady v. Maryland**, 373 U.S. 83 (1963), and it progeny, to disclose any impeachment material relevant to such unavailable declarant; that would include, as well, material which incidentally might also be 3500 material.

The "Jenks Act" is not a bar since it only bans the early production of "statements" and, further, such statements must be ones "made by a Government witness or prospective government witness." 18 U.S.C. §3500(a). There is little need, after all, to protect a "witness" who will not be called to the stand to testify. Once the hearsay declaration has been introduced, both the spirit of the Jencks Act and regard for proper "standards for the administration of justice in the federal courts" **Jencks v. United States**, 353 U.S. 675, 668 (1957)) would compel immediate prosecution of all prior and subsequent statements made by the declarant touching the subject matter of the declaration. In the case of non-witness declarant, there is simply no reason for delaying production until the last minute.

Indeed, it has been consistently recognized that the curtailment of cross-examination of government informant witness must be sparingly exercised. As stated in **United States v. Blackwood**, 456 F.2d 526, 530 (2d Cir. 1972), cert. denied, 409 U.S. 863 (1972).

> A defendant's major weapon when faced with the inculpatory testimony of an accusing witness often is to discredit such testimony by proof of bias or motive to falsify. Evidence of such matters is never collateral . . . for if believed it colors every bit of testimony given by the witness whose motives are bared.

19

See also, **United States v. Bazzano**, 570 F.2d 1120 (3d Cir. 1977), cert. denied, 436 U.S. 917 (1978) (defense permitted to vigorously cross-examine F.B.I. agent regarding his attempt to influence witnesses by reading grand jury testimony to them); **United States v. Harris**, 498 F.2d 1164, 1166-70 (3d Cir.), cert. denied, 419 U.S. 1069 (1974) (noting that since government informant was subject to extensive cross-examination regarding government's promise to aid in State proceeding, defendant's conviction would not be reversed); **United States v. Haggett**, 438 F.2d 396 (2d Cir. 1971), cert. denied, 402 U.S. 946 (1971) ; See generally, 3 Wigmore, **Evidence**, §37 st 73-74 (2d ed. 1972). Accordingly, "in fairness" (**see** citation from Advisory note of above), the prosecution should be required to disclose the requested impeaching information.

### IV. Brady Material

In addition to Rule 16, the doctrine of **Brady v. Maryland**, supra, imposes further discovery obligations on the prosecution under the Due Process Clause. The Courts have been vigilant to assure implementation of the **Brady** doctrine, especially before trial when discovery counts most. See, e.g., **Hamric v. Bailey**, 386 F.2d 390, 392-93 (4th Cir. 1967). In **Hamric**, the Court held that "disclosure to be effective must be made at a time when the disclosure would be of value to the accused." 386 F.2d at 393; cr. **United States v. Gleason**, 265 F.Supp. 880, 885 (S.D.N.Y. 1967); **United States v. Ahmad**, 53 F.R.D. 186, 193-94 (M.D. Pa. 1971). If the government is not held to its **Brady** obligations, further proceedings may be rendered nugatory.

We have been extremely specific in our requests, as specific as we can be in view of the fact that we have not had access to the materials, in order to comply with the dictates of **Brady** and **Agurs**. In **United States v. Bagley**, 473 U.S. 667 (1985). the Court recognized that non-disclosure of specifically requested evidence could be particularly misleading to defense counsel in many respects. It was conceded by even the government in **Bagley** that reliance on a misleading representation could cause the defense to change or alter its trial strategies, defenses, or lines of independent investigation. The Court stated:

> We agree that the prosecutor's failure to respond fully to a **Brady** request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting

20

the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the non-disclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of that assumption. Id. at 682-683.

Refusal to produce the specifically requested and properly sought **Brady** material runs contrary to the goal of this "government office whose aim should be to achieve justice rather than merely obtain convictions". **United States v. Fried**, 486 F.2d 201, 203 (2d Cir. 1973).

While it is true that a new trial may be ordered by the reviewing Court if it can be shown that the non-disclosed evidence could have brought a different result, the defendant should not be forced to endure an entire trial before an analysis of the government's failure to respond can be made.

It is further settled that the Court has inherent power to enter discovery orders going even beyond the specific terms of Rule 16. The Advisory Committee has stated:

> The rule is intended to prescribe the <u>minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases</u>.
> 62 F.R.D. at 308 (emphasis supplied).

Each of the defendant's requests for discovery is within the broad discovery now available in criminal cases under Rule 16, **Brady v. Maryland**, supra, the other authorities we cite, and the inherent powers of the Court to manage the case to achieve an efficient and expeditious trial.

All our discovery requests are for materials within the possession, custody, or control of the government, which of course includes attorneys for the government and any other government agents and employees participating in the present case. It has been held repeatedly that the government's discovery obligations extend to materials in possession, custody or control of all its agencies and agents. See, e.g. **United States v. Beasley**, 576 F.2d 626, 632 (5th Cir. 1978); **United States v. Bryant**, 439 F.2d 642, 650 (D.C. Cir. 1971); **United States v. James**, 495 F.2d 434, 436 (5th Cir. 1974), cert. denied, 419 U.S. 899; **United States v. Deutsch**, 475 F.2d 55, 57

21

(5th Cir. 1973).

### A. Exculpatory Information

Each subsection calls for items required to be produced under **Brady** as potentially favorable to the defense. Many of them are also called for under other items of the Request, and their materiality to the defense has already been demonstrated. In addition, we seek materials as to any evidence or information relating to the defendant, including recordings relating or referring to him or in any other form, such as interview notices and rough draft notes, investigative reports, which are no longer in existence, and an explanation why. See, **United States v. Butts**, 535 F.Sup. 608 (E.D. Pa. 1982). This is in accord with the Second Circuit decision in **United States v. Bufalino**, supra, in which the Court stated:

> [There is a] regrettably sizeable class of prosecutions in which the defense might have been hampered by the Government's failure to live up to statutory obligations with respect to preservation of evidence . . . . We will look with an exceedingly jaundiced eye upon future efforts to justify non-production of a Rule 16 or Jenks Act 'statement' by reference to 'department policy' or established 'practice' or anything of the like. There is no longer any excuse for official ignorance regarding the mandate of the law. 576 F.2d at 449-50.

See, **United States v. Paoli**, 603 F.2d 1029, 1036-37 (2d Cir. 1979).

### B. Request for a List of Trial Witnesses

This request asks for a list of the witnesses whom the prosecution intends to call in its case-in-chief. We believe that the government intends to call a number of witnesses from various governmental agencies to explain various documents in this case, as well as testify in the capacity of expert witnesses regarding the pertinent rules and regulations of either the Housing and Urban Development agency and/or the City of New York Department of Housing and Preservation.

22

The Second Circuit is clear that such discovery lies within the discretion of the District Court. **United States v. Cannone**, 528 F.2d 296 (2d Cir. 1975). Witness discovery is inconsistent neither with any provision of the Federal Rules or with any federal statute. Id. at 299. **United States v. Shoher**, 555 F.Supp. 346 (S.D.N.Y. 1983) (Haight, J.). This is in accord with the prevailing Rule in virtually every Circuit throughout the United States. See the comprehensive discussion of the authorities in the case of **United States v. Price**, 448 F. Supp. 503 (D. Colo. 1978; see also, **Will v. United States**, 389 U.S. 90, 99 (1967).

In the present case, no crime of violence is charged nor has the defendant ever been charged with any violent crimes in his past. There have been no charges of witness tampering by the government. There can be no legitimate claim here of a need to conceal or protect the identity of witnesses. All that we seek is a specification of those witnesses to be called at trial, so that our trial preparation may be more focused.

> Disclosure of witnesses to be called at trial must be sufficiently in advance of trial to allow for meaningful preparation. See also, **United States v. Shoher**, supra, 555 F.Supp. at 352; **United States v. Leichtfuss**, 723, 733-34 (N.D. Ill. 1971). Particularly in light of **United States v. Young**, 745 F.2d 733 (2d Cir. 1984), in which the use of expert witnesses was approved, defendant needs time for proper investigation to decide what expert witnesses, if any, are necessary.

The realities of the practice of law also require such disclosure. Whether a defendant is seeking court papers underlying a witness's prior criminal history, probation reports, or an opportunity to determine whether the information provided to those authorities including unemployment, home address, drug addiction, etc. was accurate, anyone of these tasks is exceedingly time consuming. Thus, if this type of discovery is not furnished sufficiently prior to trial it becomes almost useless to the defendants. If this is to become the norm, perhaps we should eliminate discovery except as "graciously" given by the government.

### C. Request for a List of Persons Interviewed in Connection with this Case

The same authorities, cited with respect to a list of trial witnesses, establish the power of the Courts to order disclosure of persons interviewed. See also, **United States v. Greater Syracuse Board of Realtors**, 438 F. Supp. 376, 381 (N.D.N.Y. 1977). Persons interviewed by the government -- especially if they are not to be called as witnesses by the prosecution -- are likely to be a profilic source of exculpatory information under **Brady v. Maryland**. There is an independent duty on the prosecution pursuant to **Brady** to disclose the identity of persons having such information, over and above Rule 16 and the inherent authority of the Court.

### D. Request for Witness Statements and Interview Reports and Notes

This request seeks statements and interview reports and notes with respect to both witnesses who will be called at trial and those who will not be.

With respect to statements of witnesses to be called at trial, the Jenks Act, 18 U,.S.C. §3500, certainly does not prevent the prosecution from making disclosure of these materials well in advance of trial. See, **United States v. Percevault**, 490 F.2d 126, 132 (2d Cir. 1974). The Court there noted that:

> [I]n most criminal cases, pretrial disclosure will redound to the benefit of all parties, counsel, and the Court. Indeed, sound trial management would seem to dictate that Jenks Act material should be transmitted prior to trial, especially in complex cases, so that those abhorrent lengthy pauses at trial to examine documents can be avoided. Id. (Emphasis supplied).

The statements of trial witnesses should be turned over as soon as possible and in no event less than 30 days before trial.

Moreover, statements of government witnesses to be called at trial and presumptively covered by the Jenks Act have been held to be discoverable in advance of trial. See, **United States v. Narcisco**, 446 F. Supp. 252, 270-71 (E.D. Mich. 1977). The Court reasoned that the due

24

process clause and the right to effective assistance of counsel required the production of such materials sufficiently in advance of trial to allow an opportunity for meaningful defense preparation. 446 F. Supp. at 270-71; cf. **United States v. Moceri**, 359 F. Supp. 431, 439 (N.D. Ohio 1973).

In any event, the Jenks Act does not in any way preclude the discovery of the materials concerning witnesses whom the prosecution does not plan to call at trial. The prosecution has an independent, constitutional duty to disclose statements of such witnesses and notes of their interviews, which may well contain material helpful to the defendant's case. **Brady v. Maryland**, supra. See, **United States v. Kaplan**, 554 F.2d 557, 580 (3d Cir. 1977); **United States v. Ladd**, 48 F.R.D. 266 (D. Alaska 1969); cf. **United States v. Gleason**, 265 F. Supp. 880, 884, 887 (S.D.N.Y. 1967).

A number of courts have therefore ordered discovery of such materials pertaining to persons whom the government does not plan to call at trial. See, e.g., **United States v. Narcisco**, supra, 446 F. Supp. at 267; **United States v. Leichtfuss**, supra, 331 F. Supp. at 735; cf. **United States v. Turkish**, supra, 458 F. Supp. at 882.

## CONCLUSION

For all the reasons set forth above, the requested relief should be granted in all respects.

Dated: New York, New York
November 7, 2007

Respectfully submitted,

*[signature]*

LEE GINSBERG
FREEMAN, NOOTER & GINSBERG
30 Vesey Street, Suite 100
New York, New York 10007
(212) 608-0808

25