UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA             :
                                     :
          - v. -                     :     07 Cr. 406 (RJS)
                                     :
CLYDE W. HALL,                       :
   a/k/a "Peter Hall," and           :
ANNE HALL,                           :
   a/k/a "Anne Torselius,"           :
   a/k/a "Anne Torselius Hall,"      :
                                     :
               Defendants.           :
                                     :
- - - - - - - - - - - - - - - - - - x


### GOVERNMENT'S MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS' PRE-TRIAL MOTIONS


                              MICHAEL J. GARCIA
                              United States Attorney for the
                              Southern District of New York

                              Attorney for the United States
                                   of America

THOMAS G. A. BROWN
Assistant United States Attorney

     - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                   :
UNITED STATES OF AMERICA           :
                                   :
          - v. -                   :    07 Cr. 406 (RJS)
                                   :
CLYDE W. HALL,                     :
   a/k/a "Peter Hall," and         :
ANNE HALL,                         :
   a/k/a "Anne Torselius,"         :
   a/k/a "Anne Torselius Hall,"    :
                                   :
                Defendants.        :
                                   :
- - - - - - - - - - - - - - - - - x

          The Government respectfully submits this Memorandum of

Law in opposition to the pre-trial motions of defendants Clyde W.

Hall, a/k/a "Peter Hall," ("Clyde Hall") and Anne Hall, a/k/a

"Anne Torselius," a/k/a "Anne Torselius Hall," ("Anne Hall").

Both defendants have moved for: (1) severance; (2) suppression of

evidence seized on January 9, 2007 from the Hall's residence at

270 Riverside Drive in New York, New York; (3) disclosure of "bad

acts" evidence, and (4) disclosure of Brady material and

impeachment material.  Clyde Hall also seeks to suppress certain

seized documents on the basis of attorney-client privilege.

In addition, Anne Hall seeks additional discovery and a bill of

particulars.  For the reasons discussed below, except for Clyde

Hall's motion to suppress on privilege grounds, defendants'

motions should be summarily denied.

## BACKGROUND[1]

## Summary of Investigation

As set forth in the criminal complaints, search warrant affidavits, and Indictment filed in this case, from at least April 2005 to January 2007, Clyde Hall operated an advance fee scheme which defrauded his victims of millions of dollars. Acting under the guise of being an "attorney in fact" or a "representative" of two purported business trusts, Gramercy International Investment Trust ("GIIT") and American Swiss Trust LLC ("AST"), Clyde Hall told his victims that, in exchange for an up-front or advance fee, he could obtain for them hundreds of millions of dollars worth of standby letters of credit, bank guarantees or other financial instruments that could be used as collateral to obtain business loans or to participate in high yield investment programs.

As a means of convincing his victims to pay him the advance fees, Clyde Hall guaranteed them that he would refund their money in the event he did not secure the funding he had promised. Further, Clyde Hall told his victims that he had successfully assisted other individuals and companies to obtain such financing for over a decade.

---

[1]    The description of the charges contained herein is simply a summary and does not purport to describe the entirety of the Government's proof.  This description is meant as a guide to the Court and is not intended in any way to bind the Government or limit its proof at any proceeding or at trial.

Since at least approximately the mid-1990's to the date of their arrest, Clyde Hall and Anne Hall resided in various apartments in Manhattan, New York, including apartments located at 200 Central Park South, 441-51 West End Avenue, 318 West 90th Street, and 270 Riverside Drive.[2]  During at least the time period of the charged advance fee scheme, Clyde Hall bolstered the legitimacy of GIIT and AST by claiming that they had "representative offices" at particular addresses in Manhattan. In reality, the addresses of the "representative offices" were simply those of the Halls' apartments at 318 West 90th Street and 270 Riverside Drive.  Clyde Hall also used the apartments' addresses or telephone numbers to open bank accounts on behalf of GIIT and AST and used the apartments to received mail on behalf of at least GIIT, as further means of promoting the charged advance fee scheme.

At various times during the course of the advance fee scheme, the Halls stopped paying rent on the apartments, in particular the apartment located at 318 West 90th Street.  In order to frustrate their landlords' attempts to evict them, continue the illusion that at least GIIT was a legitimate company with a functioning office, and allow the apartments' addresses otherwise to be used to promote the advance fee scheme, the Halls

---

[2]    Clyde Hall lived at the 200 Central Park South apartment since at least the late 1980's to approximately the mid-1990's without Anne Hall.

filed, or caused to be filed, fraudulent bankruptcy petitions.
The petitions had the effect of delaying the Halls' eviction,
allowing the Halls to evade paying rent, and prolonging Clyde
Hall's use of the apartments as "representative offices" in
support of his fraudulent scheme.

### Indictment and Government Discovery

On May 10, 2007, an Indictment, 07 Cr. 406 (RJS), was
filed in five counts. Count One charged Clyde Hall with
conspiring to commit wire fraud from at least in or about April
2005, up to and including in or about January 2007, in violation
of 18 U.S.C. § 1349, in connection with the advance fee fraud.
Counts Two through Four charged Clyde Hall with specific
instances of wire fraud in 2005 and 2006, in violation of 18
U.S.C. §§ 1343 and 2, relating to wire transfers of advance fees
from victims and an e-mail Clyde Hall sent to another victim to
convince him to send an advance fee. Count Five charged Clyde
Hall and Anne Hall with conspiring to commit bankruptcy fraud
from in or about May 2003, up to and including in or about
January 2005, in violation of 18 U.S.C. § 371, in connection with
three fraudulent bankruptcy petitions that the Halls serially
filed, or caused to be filed, to evade eviction from the 318 West
90th Street apartment after the Halls had stopped paying rent and
after their lease had expired. As noted above, Clyde Hall used

4

that apartment as a "representative office" in furtherance of the advance fee scheme.

The Government has produced discovery to the defendants in compliance with Rule 16 of the Federal Rules of Criminal Procedure. This discovery includes bankruptcy petitions filed by Clyde Hall, Anne Hall, and another individual identified as "Eleke Emeh;" bank account records; documents, including the contents of a computer hard drive, seized from the Hall's apartment at 270 Riverside Drive pursuant to a search warrant issued by a Magistrate Judge in the Southern District Court; the contents of e-mail accounts used by the Halls seized pursuant to lawfully issued search warrants; recordings of Clyde Hall meeting with a cooperating witness and an undercover agent of the Federal Bureau of Investigation in connection with a deal to provide financing in exchange for millions of dollars in upfront fees; documents relating to other purported business deals between Clyde Hall and various victims; and documents relating to proceedings to evict the Halls from various apartments in Manhattan, including apartments located at 200 Central Park South, West End Avenue, 318 West 90th Street, and 270 Riverside Drive. Additionally, the Government has informed the defendants of tangible evidentiary items currently in its possession, including corporate seals, the computer hard drive, and other objects seized from the Halls' apartment at 270 Riverside Drive,

and has offered those items for defense counsel's inspection upon request.

**ARGUMENT**

I.

**THE DEFENDANTS ARE NOT ENTITLED TO A SEVERANCE
BASED UPON CLAIMS OF MISJOINDER OR PREJUDICE**

Clyde Hall moves for severance of Count Five from the other four counts of the Indictment.  Anne Hall moves for a separate trial from her co-defendant.  The Halls contend that Count Five, which charges Anne Hall and Clyde Hall with conspiracy to commit bankruptcy fraud, was improperly joined with Counts One through Four, which charge Clyde Hall with conspiracy to commit wire fraud and substantive wire fraud.[3]  (CH Mot. at 1-4).[4]  Clyde Hall and Anne Hall also argue that each would be prejudiced unless severance is granted.  (CH Mot. at 4-5, AH Mot. at 14-15).  These claims are without merit and should be summarily denied.

---

[3]     In her omnibus pre-trial motion, Anne Hall did not seek a severance based on misjoinder, but apparently requested permission to join in Clyde Hall's later motion to sever on that ground.  See AH Mot. at 12; see also February 12, 2008 letter from Lee Ginsberg, Esq., to the Court.

[4]     "CH Mot." refers to Clyde Hall's Omnibus Pre-Trial Motions, and "AH Mot." refers to Anne Hall's Omnibus Pre-Trial Motions.

A.    **Applicable Law**

Rule 8(b) of the Federal Rules of Criminal Procedure sets forth the standard which governs when joinder both of offenses and defendants is permitted. United States v. Turoff, 853 F.2d 1037, 1043 (2d Cir. 1988). The Second Circuit has interpreted Rule 8(b) to allow joinder of offenses and defendants where two or more persons' criminal acts are "'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme.'" United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (quoting United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989)). Thus, where the acts of defendants are connected, those acts, and the defendants who performed them, are properly joined in a single indictment.

Even with proper joinder under Rule 8, Rule 14 of the Federal Rules of Criminal Procedure provides that a district court may nonetheless grant a severance or "provide whatever other relief justice requires" "if the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant." Fed. R. Crim. P. 14(a). The Supreme Court has instructed that district courts should only grant a severance under Rule 14 when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt

7

or innocence." <u>Zafiro</u> v. <u>United States</u>, 50 U.S. 534, 539 (1993)
(emphasis added).

"For reasons of economy, convenience and avoidance of
delay, there is a preference in the federal system for providing
defendants who are indicted together with joint trials." <u>United
States</u> v. <u>Feyrer</u>, 333 F.3d at 114.  Or, as the Supreme Court has
put it, joint trials "play a vital role in the criminal justice
system." <u>Richardson</u> v. <u>Marsh</u>, 481 U.S. 200, 209 (1987).  They
not only promote efficiency, but also "serve the interest of
justice by avoiding the scandal and inequity of inconsistent
verdicts." <u>Id.</u> at 210.

The presumption in favor of joint trials is so strong
that "[t]he principles that guide the district court's
consideration of a motion for severance usually counsel denial."
<u>United States</u> v. <u>Rosa</u>, 11 F.3d 315, 341 (2d Cir. 1993).  This
presumption is particularly strong where "the crime charged
involves a common scheme or plan" among the defendants.  <u>United
States</u> v. <u>Girard</u>, 601 F.2d 69, 72 (2d Cir. 1979).  Accordingly,
the Second Circuit consistently has approved the joinder of
defendants and charges where the acts of the defendants share
some identity of facts or participants, or arise from a common
plan or scheme.  <u>See, e.g.</u>, <u>United States</u> v. <u>Cervone</u>, 907 F.2d
332 (2d Cir. 1990) (proper joinder of eighteen defendants in 102-
count indictment with a variety of labor racketeering charges, as

8

well as related charges of obstruction of justice, bribery, and
making false statements); Attanasio, 870 F.2d 809 (defendants
charged with conspiracy to defraud IRS properly joined with
defendants and charges relating to a separate conspiracy to
defraud IRS because of common participants and because they were
part of a series of acts).

A defendant seeking severance therefore shoulders the
"extremely difficult burden" of showing that he or she would be
so prejudiced by joinder as to deny him or her a fair trial.
United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989)
(internal quotations omitted).  As noted, the prejudice must be
so "substantial" that there exists "a serious risk that a joint
trial would compromise a specific trial right of the moving
defendant or prevent the jury from making a reliable judgment
about guilt or innocence."  Rosa, 11 F.3d at 341.  It is not
enough for a defendant to show that he "may have a better chance
of acquittal in [a] separate trial[]."  Zafiro, 506 U.S. at 540;
see also United States v. Panza, 750 F.2d 1141, 1149 (2d Cir.
1984) explaining that prejudice must be "sufficiently severe to
outweigh the judicial economy that would be realized by avoiding
lengthy multiple trials.")

It is well settled that "differing levels of
culpability and proof are inevitable in any multi-defendant trial
and, standing alone, are insufficient grounds for separate

9

trials." United States v. Spinelli, 352 F.3d at 55 (2d Cir. 2003); United States v. Carson, 702 F.2d 351, 366-67 (2d Cir. 1983); United States v. Torres, 901 F.2d 205, 230 (2d Cir. 1990). Similarly, "[t]he fact that evidence may be admissible against one defendant but not against others does not require separate trials." United States v. Rucker, 586 F.2d 899, 902 (2d Cir. 1978); see also United States v. Zackson, 6 F.3d 911, 922 (2d Cir. 1993).

Moreover, "[t]he fact that . . . codefendants [are] tried for a crime not committed by another codefendant does not, without more, create the sort of miscarriage of justice that would require a new trial." United States v. Hernandez, 85 F.3d 1023, 1029 (2d cir. 1996). Rather, a defendant must show that evidence introduced against his or her co-defendants would "in some way affect[] the jury's ability fairly and rationally to evaluate the evidence of [the defendant's] guilt." Id. at 1029. Any potential for prejudice is diminished where the court instructs the jury to consider separately each individual and each charge. Spinelli, 352 F.3d at 55 (noting that spillover prejudice may be remedied by limiting instruction); United States v. Miller, 116 F.3d 641, 679 (2d Cir. 1997) (same).

These principles apply equally when evidence of other "bad acts" are to be admitted as to one defendant, but not another. Under this circumstance, no severance is warranted.

10

"Simply put, '[e]vidence of prior criminal offenses relating only to one defendant does not generate prejudice rising to the level that requires severance.'" United States v. Taveras, 95 Cr. 173, 1995 WL 390167, *7 (S.D.N.Y. June 30, 1995).  "The appropriate remedy for any possible prejudice in the event that Rule 404(b) evidence is admitted relating to a co-defendant is a limiting instruction concerning the use of Rule 404(b) evidence and an instruction directing that the jury not consider the evidence of a co-defendant's prior criminal conduct in determining the defendant's guilt, not a severance." Id.; see, e.g., United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005) ("Ramirez did not meet his burden to show compelling prejudice that the judge's first limiting instruction to the jury, regarding the evidence of Quinones's prior acts and their lack of relevance to Ramirez, was ineffectual or that the jury could not make an individualized determination as to his guilt or innocence"); United States v. Manner, 887 F.2d 317, 325 (D.C. Cir. 1989) ("we find no undue risk, here, that the jury would unjustly impute Leeper's subsequent bad act to Manner"); United States v. Robinson, 774 F.2d 261, 266-267 (8th Cir. 1985) (denying severance motion because "[t]he 'other crimes' and bad acts evidence that was admitted against Wilson or Robinson only was accompanied by the court's instructions to the jury that the evidence was not to be considered against Milliken"); United

11

States v. Tuchow, 768 F.2d 855, 865 n.10 (7th Cir. 1985) ("we hold that the court did not abuse its discretion in denying the severance motion given the clear language contained in the court's limiting instructions that the evidence as to Farina's other acts was to be considered against Farina only"); United States v. Wei, 862 F. Supp. 1129, 1136 (S.D.N.Y. 1994) (defendants did not show "any reason why the potentially prejudicial effect of evidence admissible against his co-defendants could not be adequately mitigated by a limiting instruction").

B.    **Discussion**

Measured against the foregoing standards, none of the arguments advanced by the Halls for discretionary severance survives scrutiny or describes a prejudice sufficiently severe to overcome the strong presumption in favor of joint trials.

1.    **The Counts In The Indictment Are Properly Joined**

As a threshold matter, the Halls argue that Counts One through Four and Count Five of the Indictment are misjoined because they relate to separate frauds that have "no factual or legal relationship." (CH Mot. at 2). The Halls claim support for this position by noting that the charged frauds "occurred in non-overlapping time periods" and speculating that entirely separate proof will be offered to prove each fraud. (Id.). This argument is without merit.

12

The evidence in this case demonstrates that there is a substantial nexus between the fraudulent bankruptcy petitions and the advance fee scheme.  For example:

a.  The Government expects the evidence at trial to show that, as noted above, Clyde Hall used the apartments in which he lived with Anne Hall, including the 318 West 90th Street apartment, as representative offices of GIIT.  GIIT was simply a vehicle Clyde Hall used to promote the legitimacy of his scheme and convince unwitting victims to pay him upfront fees.  In order to maintain GIIT's "office" at 318 West 90th Street and thus preserve the credibility of his advance fee scheme after he and his wife chose to remain there without paying rent, Clyde Hall and his wife filed, or caused to be filed, fraudulent bankruptcy petitions in which they misstated their assets, among other things.

b.  The Government expects the evidence at trial to show that Anne Hall and Clyde Hall used GIIT to hide their assets in furtherance of the bankruptcy fraud.  For example, as described in first Complaint filed in this case, 05 Mag. 1571 ("Complaint"), in or about November 2003, when the Halls stopped paying rent for the 318 West 90th Street apartment, an account was opened at HSBC Bank in the GIIT trustee's name using the 318 West 90th Street apartment's address (the "GIIT Account").  Starting in about late August 2004, when the Hall's landlady

13

froze Anne Hall's personal bank account in an attempt to collect
back rent, thousands, and then hundreds of thousands of dollars
began pouring into the GIIT Account from advance fee victims.
Without disclosing it to the Bankruptcy Court, the Halls used the
GIIT Account to pay day-to-day household expenses, as well as pay
more than $70,000 in initial costs for their new apartment at 270
Riverside Drive, which they moved into while at least one of the
fraudulent bankruptcy petitions was pending.  Indeed, the
connection between the Halls' finances and the GIIT account was
so strong that after Anne Hall's account was frozen the Halls
transferred deposits of their Social Security benefits from Anne
Hall's account to the GIIT Account.  (Complaint ¶¶ 15, 10(b)).

        c.  The Government expects the evidence at trial
to show that many of Clyde Hall's co-conspirators in the advance
fee scheme, including the GIIT trustee, are listed as creditors
in both his and Anne Hall's bankruptcy petitions.

        Because the fraudulent bankruptcy petitions were filed
to maintain GIIT's "office" and the bolster the credibility of
the advance fee scheme, the bankruptcy fraud arises from the
advance fee scheme.  This relationship is a sufficient connection
to warrant joinder of both frauds in the same indictment because
proof of the advance fee scheme is necessary to put the
bankruptcy fraud in an understandable context for the jury.
Turoff, 853 F.2d at 1044 ("[T]here is a key link between the two

offenses – one scheme stemmed from the other – and that link provides a sound basis for joinder under Rule 8(b).").

For the same reason, the common factual links noted above are sufficient to defeat a claim of misjoinder.  <u>See</u> <u>United States</u> v. <u>Ferrarini</u>, 9 F. Supp.2d 284, 292 (S.D.N.Y. 1998) (Cote, J.) (noting that Rule 8(b) "does not require a common goal or conspiracy" and that it is sufficient that count are "connected by common facts or participants").  It would, for example, be necessary to explain GIIT and the source of the Hall's unreported income during the pendency of the fraudulent bankruptcy petitions.

2.  <u>**Clyde Hall Will Not Be Prejudiced By A Joint Trial**</u>

Alternatively, Clyde Hall argues that joinder of both groups of counts would prejudice him because it would allow the Government "to make an 'end run' around Rule 404(b) of the Federal Rules of Evidence" (presumably because evidence of both frauds in the same trial would allow the jury to impermissibly conclude that Clyde Hall had a propensity to commit one fraud based on evidence of the other).  (CH Mot. at 5).  According to Hall, this prejudice would be cured by separate trials, "where the Government would be unable to introduce [at one trial] evidence of the other [fraud]."  (<u>Id.</u>).

This argument is baseless.  First, a joint trial would not result in an impermissible "end run" around Rule 404(b).  As

explained above, evidence of the advance fee fraud would be properly admitted in the Government's case-in-chief to explain and put into context the bankruptcy fraud. Further, evidence of the advance fee fraud would be properly admissible under Rule 404(b) at a joint trial to show Clyde Hall's motive and intent to file the fraudulent bankruptcy petitions.

Second, contrary to Clyde Hall's assertion, severance would not guarantee that evidence of one fraud would not be admissible at the trial of another. For example, as noted above, evidence of the advance fee fraud could be offered under Rule 404(b) to prove motive and intent. Finally, any concerns about propensity raised by including both frauds in the same case would be addressed by an appropriate limiting instruction from the Court.

Clyde Hall also half-heartedly argues that he may be prejudiced by a joint trial because either he or his wife may be dissuaded from testifying in his defense. In particular, he appears to argue that he would not wish to risk cross-examination at a joint trial about one fraud while testifying about the other. Similarly, he argues that his wife may not wish to be cross-examined about her involvement in the bankruptcy fraud if she testifies on his behalf at a joint trial. Clyde Hall claims that both of these problems would be cured through separate trials because he and his wife could testify without waiving

16

their Fifth Amendment rights. (CH Mot. at 4-5). He asks the Court reserve decision on this issue, however, claiming he has not determined what his or his wife's testimony would be. (Id.).

Notwithstanding Clyde Hall's attempt to punt the issue, the Court should summarily reject this argument because it is predicated on the spurious concept - unsupported by any authority cited by the defendants - that as long as the non-trial defendant is not actually on trial, he or she can testify without consequence.

The Fifth Amendment does not provide a defendant with the right to testify and avoid the consequences of that testimony. If a defendant chooses to exercise his or right to testify, the defendant waives the right to refuse to answer questions during cross-examination that are reasonably related to matters properly within the scope of direct testimony. See Brown v. United States, 356 U.S. 148, 155-56 (1958); see also Mitchell v. United States, 526 U.S. 314, 321 (1999) (in single proceeding, witness may not testify voluntarily about subject and then invoke Fifth Amendment privilege against self-incrimination when questioned about details). This doctrine is not invalidated where the testifying defendant is doing so at the severed trial of a co-defendant. See, e.g., United States v. Wilson, 11 F.3d 346, 354 (2d Cir. 1993) (noting that one of the elements to be considered in whether to grant severance based on a defendant's

need to call a co-defendant is "the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege"); cf. United States v. Solomonyan, 451 F. Supp.2d 626, 651 (S.D.N.Y. 2006) (failure to submit a declaration from co-defendant affirming, under penalty of perjury, that co-defendant would testify and waive his Fifth Amendment privilege warrants denial of motion for severance).

    Accordingly, Anne Hall and Clyde Hall would be subject to waiver of their Fifth Amendment privilege regardless of whether severance is granted.  Therefore, Clyde Hall's claim of prejudice on this ground must fail.

## 3.  Anne Hall Will Not Be Prejudiced By A Joint Trial

    For her part, Anne Hall argues that she is entitled to an entirely separate trial from her husband on the basis of a prejudicial spillover effect caused by the introduction at trial of evidence relating to the charged advance fee scheme, which she claims would not be admissible against her.  (AH Mot. at 14).

    "[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Spinelli, 352 F.3d at 55 (2d Cir. 2003).  Similarly, "[t]he fact that evidence may be admissible against one defendant but not against others does not require separate trials." United States v. Rucker, 586 F.2d 899, 902 (2d Cir. 1978).  A limiting

instruction is the proper remedy to diminish any potential spillover prejudice in these circumstances. <u>Spinelli</u>, 352 F.3d at 55. Moreover, Anne Hall ignores the fact that, as discussed above, evidence relating to the advance fee scheme would be admissible in any event to explain and provide context for the bankruptcy fraud in which she participated. As a result, that evidence would still be offered even at a separate trial. Accordingly, Anne Hall's motion to sever on the basis prejudicial spillover from the charged advance fee scheme should be rejected.

Anne Hall also seeks a severance under Rule 14, claiming that the possible admission of evidence under Rule 404(b) as to Clyde Hall only would prejudice her. (AH Mot. at 14). The admission of evidence pursuant to Rule 404(b) as to other defendants does not justify a severance. Indeed, the evidence with which Anne Hall is concerned relates solely to Clyde Hall. A limiting instruction, not severance, is "[t]he appropriate remedy for any possible prejudice in the event that Rule 404(b) evidence is admitted relating to a co-defendant." <u>United States v. Taveras</u>, 95 Cr. 173, 1995 WL 390167, *7 (S.D.N.Y. June 30, 1995).

Lastly, Anne Hall contends that "because of the husband and wife relationship, the prejudicial spill over will be heightened" against her. (<u>Id.</u> at 15). This claim is also unavailing. As an initial matter, Anne Hall fails to explain how

the fact she is married to Clyde Hall would be inherently prejudicial to her at a joint trial.  Regardless, "no rule forbids family members charged in the same indictment from being tried together."  United States v. Jones, 652 F.2dd. 1561, 1565 (S.D.N.Y. 1986) (collecting cases).

## II.

### THE HALLS' MOTION TO SUPPRESS THE SEARCH OF THEIR APARTMENT SHOULD BE DENIED WITHOUT A HEARING

Clyde Hall and Anne Hall seek to suppress evidence seized from the 270 Riverside Drive apartment pursuant to a search warrant after their arrest based on two closely related arguments.[5]  First, the Halls argue that the warrant was the result of an illegal "confirmatory search."  (CH Mot. at 7-9).  Second, the Halls claim that the items seized should be suppressed as the "fruit of the poisonous tree" because the warrant was based on probable cause obtained through an illegal search.  (CH Mot. at 9-11).

Both claims can be rejected without a hearing.  As discussed below, there was ample probable cause for a Magistrate Judge to issue the search warrant independent of the two pieces of information – a clipboard and an unopened piece of mail – that

---

[5]    In her original motion papers, Anne Hall did not move to suppress the search of the 270 Riverside Drive apartment. After Clyde Hall so moved, however, Anne Hall requested permission to join in that motion.  (See Anne Hall's letter to the Court dated February 12, 2008).

the defendants claim was the result of the illegal search, such
that the evidence is admissible at trial.

A.    **Applicable Law**

"When the challenged evidence has an independent source,"
such evidence is not subject to suppression because the
"exclusion of such evidence would put the police in a worse
position than they would have been in absent any error or
violation." Murray v. United States, 487 U.S. 533, 537 (1988)
(quoting Nix v. Williams, 467 U.S. 431, 443 (1984)) (internal
quotation marks omitted); see, e.g., United States v. Demosthene,
2004 WL 1243607, at *5 (S.D.N.Y. June 4, 2004).  "The ultimate
question" is whether the later, purportedly lawful search – as
compared to the initial, unlawful search – "was in fact a
genuinely independent source of the information and tangible
evidence at issue here." Murray, 487 U.S. at 542.  If so, the
independent source doctrine "allows the government to use
evidence that it obtained both illegally and legally . . . ."
United States v. Johnson, 380 F.3d 1013, 1014 (7th Cir. 2004)
(citing Murray, 487 U.S. at 537).

B.    **Discussion**

Assuming, arguendo, that law enforcement agents
conducted a wholesale illegal search of the 270 Riverside Drive
apartment prior to obtaining the search warrant, and included
tainted observations in the search warrant application, the

21

Halls' motion to suppress must fail because there existed more than sufficient probable cause to obtain the warrant lawfully independent of the results of the allegedly illegal search.

At or around 1 p.m., on January 9, 2007, following the Halls' arrest earlier that day, the Honorable Debra Freeman, Magistrate Judge for the United States District Court for the Southern District of New York, issued a search warrant for the 270 Riverside Drive apartment, authorizing the Government to search for and seize evidence relating to the Halls' fraudulent bankruptcy petitions and Clyde Hall's advance fee scheme. In support of its application for the search warrant, the Government submitted a 34-page affidavit (the "Affidavit") by a Criminal Investigator with the United States Attorney's Office for the Southern District of New York. Attached to the Affidavit were the two criminal complaints in this case, as well as a 1989 affidavit by an agent of the Federal Bureau of Investigation in support of warrants to arrest various individuals, including Clyde Hall, and to search various locations, including Clyde Hall's then-apartment at 200 Central Park South in Manhattan.[6]

The Affidavit laid out in considerable detail the Government's investigation (Affidavit at 4-19), starting with a 1989 advance fee scheme that Hall allegedly perpetrated while

---

[6]    A copy of the Affidavit and accompanying exhibits is being submitted to the Court in conjunction with this brief.

representing himself to be the "Managing Director" of "Banque Commerciale D'Haiti Mortgage Services, Inc." (Affidavit at 13-14). The Affidavit then described at length the connection, from at least 1989 to the present, between Clyde Hall's fraudulent activities and the various apartments in which they resided, including the 270 Riverside Drive apartment. (Affidavit at 19-24). Significantly, the overwhelming majority of the information supporting this connection was gathered separately from any agents' observations of the 270 Riverside Drive apartment after the Halls' arrest. This information includes, among others things, the following:

a.    Various documents showing that the business address for GIIT, one of the purported "business trusts" that Clyde Hall used as a vehicle for his advance fee scheme, and for GIIT's purported trustee, was the same as the Halls' apartments over at least the past six years, including (1) an apartment at 441-51 West End Avenue in New York, New York, where the Halls lived from at least 2001 to April 2003; and (2) an apartment at 318 West 90th Street in New York, New York, where the Halls lived from April 2003 until January 2005, when they moved into the 270 Riverside Drive apartment. (Affidavit at 19-20).

b.    Documents sent by Clyde Hall to victims showing that GIIT maintained "representative offices" at locations

corresponding to the Halls' apartments at 318 West 90th Street and 270 Riverside Drive in Manhattan.  (Affidavit at 20-21).

        c.   A document that Hall sent to a victim on or about April 20, 2006, showing that AST had a telephone number corresponding to that listed for the 270 Riverside Drive apartment.  (Affidavit at 21).

        d.   Subscriber information for two e-mail addresses that Clyde Hall used to communicate with victims of the bankruptcy and advance fee frauds, "gramtrust@aol.com" and "amerswisstrust@aol.com," showing that both e-mail accounts were registered to Anne Hall at the 318 West 90th Street apartment and the 270 Riverside apartment, and that both accounts were active as of at least November 7, 2006, the latest available records. (Affidavit at 21-22).

        e.   Records for a bank account held in the name of GIIT at HSBC Bank showing that account statements were mailed to addresses corresponding to the 318 West 90th Street apartment and the 270 Riverside Drive apartment.  (Affidavit at 22-23).

        f.   Other evidence indicating that from at least 1989 to the date the Halls were arrested, Clyde Hall maintained offices within the apartments he lived in and used the offices to conduct fraudulent activities, including:

        i.   Observations by an undercover law enforcement officer, as detailed in the 1989 affidavit in support of arrest

warrants and search warrants, that Clyde Hall maintained an office in the 200 Central Park South apartment that he appeared to have used in connection with his "Banque Commerciale D'Haiti" fraud.  (Affidavit at 23-24).

       ii.   The Halls' landlady at 318 West 90th Street had visited the Halls' apartment there between 2003 and 2005, and observed that Clyde Hall maintained an office there.  It was the landlady's understanding that Clyde Hall worked from home. (Affidavit at 24).

       iii. On or about April 24, 2006, Clyde Hall spoke to a cooperating witness over the telephone in connection with a fraudulent advance fee offer.  During that conversation, Hall stated that he worked from an apartment in New York City owned by the trust he represents [a reference to GIIT and the 270 Riverside Drive apartment], but that he couldn't meet the cooperating witness there "for tax reasons."  (Affidavit at 24).

       Only at the end of this long recitation does the Affidavit included two additional paragraphs detailing the Criminal Investigator's plain view observations of the interior of the 270 Riverside Drive following the arrest of the Halls. Specifically, the Criminal Investigator, while escorting Clyde Hall to get dressed, observed a room that appeared to be an office, an envelope addressed to GIIT on a desk in the office, and a clipboard containing the names and addresses of individuals

involved in the advance fee scheme in the apartment's living room.  (Affidavit at 24-25).

These last observations merely served to confirm what was already clear from the Affidavit: the Halls' residences, including the 270 Riverside Drive apartment, had long been used in connection with fraudulent activity.  As a result, there was ample probable cause independent of the agent's observations of the interior of 270 Riverside Drive apartment to believe that documents relating to those fraudulent activities would be found there.  Magistrate Judge Freeman would have had more than sufficient basis to issue the search warrant without regard to any information obtained after the Halls' arrest.  Accordingly, under the independent source doctrine, the information obtained as a result of the search warrant should be admissible.

For the same reason, the defendants' claim of an impermissible "confirmatory search" under Murray v. United States, 487 U.S. 533 (1988) is without merit.  In Murray, law enforcement agents, after illegally entering a warehouse and discovering contraband, obtained a search warrant for the warehouse without relying on any observations made during the illegal entry.  Id. at 535-36.  Noting that the evidence would be admissible if the warrant-authorized search was based on information "genuinely independent" of the illegal search, id. at 541, the Court held that would not be the case "if the agents'

26

decision to seek the warrant was prompted by what they had seen during the initial [illegal] entry," or "if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant," id. at 542.

Even assuming for the sake of argument that law enforcement agents illegally searched the 270 Riverside Drive apartment before obtaining the warrant, suppression is not warranted under Murray. As discussed above, there was ample independent probable cause to believe that the 270 Riverside Drive apartment contained relevant evidence. Accordingly, there is no basis to conclude that law enforcement agents decided to seek the search warrant based on their limited, plain view observations of a clipboard, a piece of unopened mail, and an office, or that the presentation of this information in the Affidavit in support of the search warrant application would have affected Magistrate Judge Freeman's decision to issue the warrant.

### III.

**IF THE COURT DETERMINES THERE WAS
INSUFFICIENT INDEPENDENT PROBABLE CAUSE,
THE MOTION TO SUPPRESS THE SEARCH OF THE HALL'S APARTMENT
SHOULD BE DENIED FOLLOWING A HEARING**

**A.    Applicable Law**

Law enforcement officers may enter a suspect's residence to arrest him or her if they have a valid arrest warrant. Payton v. New York, 445 U.S. 573, 602-03 (1980).

"Agents may enter a suspect's residence, or what they have reason to believe is his residence, in order to effectuate an arrest warrant where a reasonable belief exists that the suspect is present." United States v. Lauter, 57 F.3d 212, 214 (2d Cir. 1995); see United States v. Gori, 230 F.3d 44, 50 (2d Cir. 2000) (police may reasonably enter a home without appropriate consent if they have arrest warrant).

In Maryland v. Buie, 494 U.S. at 334-35, the Supreme court identified two kinds of warrantless searches the police may conduct incident to a lawful arrest inside a home: first, because of the risks inherent during an arrest, the officers are "automatically justified" in searching the area adjoining the place of arrest from which an attack could be launched against the officers. Buie, 494 U.S. at 334. Second, where there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing" that there is within the home "an individual posing a danger to those on the arrest scene, "the officers may conduct a protective sweep of the home looking wherever such a person might be hiding." Id. at 334-35. Such a sweep must be "quick and limited, . . . narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. at 261.

28

As the Buie Court explained, such a search of other areas of the home is reasonable in light of the officers' "interest . . . in taking steps to assure themselves that the house . . . is not harboring other persons who are dangerous and who could unexpectedly launch an attack." Id. at 333. That interest, the Court found, "is sufficient to outweigh the intrusion such procedures may entail." Id. at 334.

Incriminating evidence discovered in "plain view" during a valid protective sweep is admissible. See United States v. Medina, 944 F.2d at 69 (during protective sweep inside apartment, agents properly seized pistol lying in a partially opened gun case in bedroom because it was in plain view); United States v. Jackson, 778 F.2d 933, 937 (2d Cir. 1985) (objects coming into plain view during a security check can be properly seized).

B.    **Discussion**

Should the Court determine that the search warrant was not supported by sufficient independent probable cause, the Government consents to a hearing at which it expects to demonstrate, applying the foregoing standards, that (1) law enforcement agents were lawfully present in the 270 Riverside Drive apartment pursuant to an arrest warrant; (2) while there, they lawfully viewed items in plain view, including the clipboard, unopened piece of mail, and office that were mentioned

in the search warrant Affidavit; and (3) they did not otherwise
conduct an improper search of the apartment prior to the issuance
of the search warrant.  Accordingly, the defendants' motion to
suppress the results of the search warrant should be rejected
following a hearing, if necessary.

## IV.

### THE COURT SHOULD RESERVE DECISION ON CLYDE HALL'S MOTION TO SUPPRESS BASED ON ATTORNEY-CLIENT PRIVILEGE

Clyde Hall moves to suppress certain documents on the
basis of attorney-client privilege.  Specifically, he claims that
the documents and their attachments constitute protected
communications between himself, acting as an individual or on
behalf of GIIT and AST, and his personal attorney or attorneys
for those entities.  (CH Mot. at 5-6).  For the reasons discussed
below, a decision by the Court on his motion would be premature.

Although neither defendants nor their counsel advised
the Government that it had seized any privileged items, in an
abundance of caution the Government assigned a "wall" Assistant
U.S. Attorney (the "Wall Assistant") to review for potentially
privileged communications the material seized from the 270
Riverside Drive apartment (including paper documents and a copy
of the contents of a computer hard drive), as well as the
contents of two e-mail accounts used by Clyde Hall,
amerswisstrust@aol.com and gramtrust@aol.com.

30

By a letter dated June 4, 2007, the Wall Assistant sent copies of paper documents from the 270 Riverside Drive apartment search that had been segregated as potentially privileged, as well as copies of the full search warrant results for the two e-mail accounts, to Lee Ginsberg, Esq., and Malcom Taub, Esq., attorneys for Anne Hall and Clyde Hall, respectively, and asked them to advise her by June 28, 2007 of their intent to assert a privilege and provide a detailed privilege log.

By letter dated June 21, 2007, Mr. Ginsberg promptly advised the Wall Assistant that Anne Hall would not assert an attorney-client privilege with respect to any of the documents described in the June 4 letter.  Mr. Taub did not respond to the Government's letter, nor did Martin Geduldig, Esq., who took over representation of Clyde Hall on or about June 21, 2007.  On or about August 21, 2007, James Cohen, Esq., took over as Clyde Hall's attorney, after Mr. Geduldig sought permission to withdraw on or about August 11, 2007, following a family tragedy the week before that required his attention.  Mr. Cohen also initially did not respond to the June 4 letter.

On or about October 15, 2007, the Wall Assistant sent Mr. Ginsberg and Mr. Cohen a CD-ROM containing documents and files taken from the copy of the hard drive seized from the 270 Riverside Drive apartment, and asked them to advise her by November 19, 2007 of their intent to assert a privilege with

respect to that material.  The Wall Assistant never received a response from Mr. Ginsberg.  Mr. Cohen sought and received multiple extensions of the deadline to respond to the October 15 letter.  On December 7, 2007, Mr. Cohen provided the Wall Assistant with a privilege log for the hard drive seized from the 270 Riverside Drive apartment and referenced in the October 15 letter.  After providing the privilege log, Mr. Cohen's office advised the Wall Assistant that it also intended to create a privilege log for the contents of the two e-mail accounts referenced in the June 4 letter.  No deadline was agreed between the parties, and the Wall Assistant made clear to Mr. Cohen's office that the Government did not concede that any such assertion of the privilege would be timely.

On or about February 5, 2008, Mr. Cohen provided the Wall Assistant with a copy of a privilege log for the two e-mail accounts that were the subject of the June 4 letter.  On February 26, 2008, the Wall Assistant then sought to confirm that Clyde Hall was not asserting a privilege with respect to the paper documents seized from the 270 Riverside Drive apartment that were also the subject of the June 4, 2007 letter, since Mr. Cohen's office had advised the Wall Assistant in early December 2007 that it might wish to assert a privilege as to those documents.  On February 27, 2008 Mr. Cohen's office responded that it apparently was unable to locate the documents, and the Government promptly

32

provided another copy the next day.  Mr. Cohen's office has since indicated that the privilege review will not be accomplished before the Government's brief is due.

Separately, by a letter dated February 25, 2008, the Wall Assistant wrote to Mr. Cohen seeking to narrow the scope of the attorney-client issues raised by the defendant in this case. The parties have been engaged in discussions which have not yet concluded.

Accordingly, because defense counsel has not completed its privilege review and because the parties are still in the process of narrowing the scope of the controversy, the Government respectfully submits that this issue should be addressed by the Court at a later date, if necessary.  The Government expects that any claims of attorney-client privilege can be defined promptly.[7]

## V.

## ANNE HALL'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED

Anne Hall contends that she is entitled to a bill of particulars specifying "which statements made by the defendant in the bankruptcy proceeding were false or otherwise give rise to

---

[7]    Should Clyde Hall persist in seeking to suppress documents based on attorney-client privilege, the Government anticipates that motion would fail based on, among other grounds, the crime-fraud exception.  There also may be grounds to deny the motion to the extent defense counsel failed to assert the privilege in a timely fashion after being notified by the Wall Assistant.

the allegations of fraud." (AH Mot. at 6). This request should be denied.[8]

## A.   Applicable Law

The purpose of a bill of particulars is to apprise a defendant of pending charges with sufficient precision to enable the defendant to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy" if warranted. United States

_____

[8]    As an initial matter, Anne Hall's request for a bill of particulars (as well as her's and Clyde Hall's requests for additional discovery, discussed below) should be denied for failure to comply with Local Criminal Rule 16.1, which requires moving counsel to submit an affidavit certifying that he or she has conferred in good faith with opposing counsel to resolve any discovery issue presented to the Court. That Rule mandates that:

> No motion addressed to a bill of particulars or answers to discovery and inspection shall be heard unless counsel for the moving party files with the court simultaneously with the filing the moving papers an affidavit certifying that said counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the court and has been unable to reach such an agreement. If some of the issues raised by the motion have been resolved by agreement, the affidavit shall specify the issues remaining unresolved.

Contrary to Local rule 16.1, Anne Hall's and Clyde Hall's motion papers neglect to mention any such attempt. Although counsel have discussed this case, the defendants have not previously requested the materials now sought in the bill of particulars or in the other discovery requests. This failure to comply with Local Rule 16.1 is an independently sufficient cause to reject Anne Hall's motion for a bill of particulars. See, e.g., United States v. Rojas, No. S4 01 Cr. 257 (AGS), 2001 WL 1568786 at *7 (S.D.N.Y. Dec. 7, 2001) (denying motion for bill of particulars because the defendant failed to comply with Local Rule 16.1).

v. Bortnovsky, 820 F.2d 572, 574 (2$^d$ Cir. 1987).  Nevertheless,
"[a] district court should deny a request for a bill of
particulars 'if the information sought by defendant is provided
in the indictment or in some acceptable alternative form.'"
United States v. Harding, 273 F. Supp. 2d 411, 429-430 (S.D.N.Y.
2003) (quoting Bortnovsky, supra); see also United States v.
Walsh, 194 F.3d 37, 47 (2d Cir. 1999) ("[A] bill of particulars
is not necessary where the government has made sufficient
disclosures concerning its evidence and witnesses by other
means."); United States v. Barnes, 158 F.3d 662, 665-66 (2d Cir.
1998) (denying request for a bill of particulars because "the
government had provided the defendants with extensive additional
information concerning their alleged involvement in the charged
offenses so as to enable them to understand the nature of the
charges against them, to prepare a defense, and avoid unfair
surprise at trial.") (quotation omitted);  United States v. Song,
1995 WL 736872, *7 (S.D.N.Y.) ("If the information sought can be
obtained from the indictment or discovery already provided, a
bill of particulars generally will not be granted.").  "A bill of
particulars is not . . . a general investigative tool for the
defense, as 'the prosecution generally need not particularize all
of its evidence, so long as the defendant is adequately informed
of the charges against him.'"  Harding, 273 F. Supp. 2d at 429
(quoting United States v. Lino, 2001 WL 8356 *3 (S.D.N.Y. 2000)).

35

Furthermore, a bill of particulars is not to be used to learn evidentiary detail, United States v. Torres, 901 F.2d at 234, the precise manner in which the charged crimes were committed, United States v. Andrews, 381 F.2d 377, 378 (2d Cir. 1967), cert. denied, 390 U.S. 960 (1968), the manner in which the Government will prove the charges, United States v. Leonelli, 428 F. Supp. at 882, all the overt acts in furtherance of a conspiracy, United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975), cert. denied, 426 U.S. 923 (1976), the names of unindicted co-conspirators, United States v. Williams , 181 F. Supp.2d 267, 295 (S.D.N.Y. 2001), or particular acts that a particular defendant participated in, had knowledge of, or for which he is being held responsible. United States v. Jimenez, 824 F. Supp. 351, 363 (S.D.N.Y. 1993).

The rationale for this highly restricted use of a bill of particulars is simple. First, the Government is not required to provide information tantamount to an itemized preview of its proof because of the very real danger in criminal cases that the defendant will tailor his testimony to explain away the Government's predisclosed case. United States v. Cimino, 31 F.R.D. 277, 279 (S.D.N.Y. 1962), aff'd, 421 F.2d 509 (2d Cir. 1963). Second, detailed inquiries into the Government's case repeatedly have been rejected because they would unduly restrict the Government in presenting its proof at trial. See, e.g.,

36

<u>United States</u> v. <u>Jimenez</u>, 824 F. Supp. at 363; <u>United States</u> v.

<u>Goldman</u>, 439 F. Supp. 352 (S.D.N.Y. 1977).  Thus, if a defendant

has been given adequate notice of the charges against him in the

indictment or in some alternative form, the Government need not

disclose additional details about the case.  See <u>Bortnovsky</u>, 820

F.2d at 574.

     B.    **Discussion**

     The charge against Anne Hall is straightforward: that

she conspired with her husband and co-defendant, Clyde Hall, and

others, to file, or cause to be filed, false bankruptcy

petitions.  In addition to the first Complaint in this case, 05

Mag. 1571, which provides a detailed narrative of the

circumstances surrounding the false bankruptcy filings, the

Government has provided extensive discovery, including bankruptcy

petitions, bank records, and search warrant affidavits.  In

addition, the Government has invited Anne Hall to view the

originals of items seized in connection with this case which have

not been produced in hard copy form.  Anne Hall has not taken the

Government up on this offer.

     The allegations in the Indictment, first Complaint, and

search warrant affidavits, as well as the abundant discovery

produced by the Government, make clear the offense with which

Anne Hall is charged.  Indeed, the overt acts portion of Count

Five of the Indictment specifies particular false statements in

the bankruptcy petitions.  Anne Hall's demand for a bill of particulars which specifies just such information is therefore without foundation.  Accordingly, the motion for a bill of particulars should be denied.

VI.

### DEFENDANTS' MOTIONS FOR OTHER DISCOVERY SHOULD BE DENIED

Clyde Hall and Anne Hall also assert a wide array of other discovery requests, including a (1) demand for Rule 16 discovery; (2) immediate disclosure of the Government's trial exhibit list, trial witness list, and the identities of anyone interviewed by the Government in connection with this case; and (3) immediate production of statements of unindicted co-conspirators, 3500 material, Brady and Giglio materials, and Rule 404(b) evidence.[9]  As set forth below, these requests should be denied because they either seek material that is not discoverable, are premature, or are moot because the Government has already provided the requested material.

### A.   Early Production of Brady and Giglio Material

The Halls each request early production of Brady and Giglio material.  (CH Mot. at 12, AH Mot. at 7-11).  As

---

[9]  Clyde Hall and Anne Hall also move the Court for an order allowing them to submit supplemental motions.  (CH Mot. at 4, AH Mot. at 12).  The Government respectfully requests the opportunity to address any such requests, should the defendants ultimately determine them to be appropriate.

previously communicated to defense counsel, the Government is
currently unaware of any exculpatory evidence.   However, the
Government recognizes its Brady obligations and takes them
extremely seriously.   Accordingly, in the event that any
exculpatory evidence within the meaning of Brady should come to
light, the Government will produce that evidence and make every
effort to do so without delay.

        With respect to Giglio material, the Government intends
to produce any such material at the same time it produces any
Jencks Act material.   See, e.g., United States v. Claridy, 2003
WL 1396846, at *1 (S.D.N.Y. Mar. 20, 2003) (McKenna, J.)
("impeachment material should be produced at the same time as the
government produces 18 U.S.C. §3500 material"); United States v.
Gutierrez-Flores, 1994 WL 558034, at *3 (S.D.N.Y. Oct. 11,
1994)(Haight, J.) (disclosure of impeachment material not
required "until the witness is called to testify").   Indeed, as
the Second Circuit has repeatedly held, "as long as a defendant
possesses Brady [and Giglio] evidence in time for its effective
use, the government has not deprived the defendant of due process
of law simply because it did not produce the evidence sooner."
United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001).   There
is no requirement that Giglio material be produced at any
particular time prior to trial so long as it is produced "in time
for its effective use" at trial.   In any event, the Government

certainly intends to produce any <u>Giglio</u> and Jencks Act material sufficiently in advance of each witness's testimony in order to permit its review by the defendant without interruption of the trial.

**B.   <u>Early Disclosure of Rule 404(b) Evidence</u>**

The Halls also each seek notice of any 404(b) evidence that the Government intends to introduce at trial.  (CH Mot. at 11-12, AH Mot. at 6-7).  The Government is cognizant of the provisions for pretrial notice in Rule 404(b) of the Federal Rules of Evidence, and will provide Rule 404(b) notice before trial.  However, the motion for 404(b) evidence is premature. The Government has yet to decide what, if any, 404(b) evidence it will seek to offer at trial.[10]

In any event, notice afforded at least ten working days before trial consistently has been deemed "reasonable" within the meaning of the rule.  <u>See, e.g</u>, <u>United States</u> v. <u>Valenti</u>, 60 F.3d 941 (2d Cir. 1995) (in embezzlement case, four days' notice of evidence of prior wire transfers showing defendant's knowledge was sufficient notice of other acts evidence under Rule 404(b)); <u>United States</u> v. <u>Amery</u>, 2002 WL 31027514 (S.D.N.Y. Sept. 10, 2002) (Daniels, J.) (directing Government to give notice of Rule 404(b) evidence 10 days prior to trial); <u>United States</u> v.

---

[10]     It should be noted that the Government, however, has produced discovery of potential 404(b) evidence.

Savarese, 2002 WL 265153, at *3 (S.D.N.Y. Feb. 22, 2002)
(Schwartz, J.) (same); United States v. Riddick, 1999 WL 182584,
at *2 (S.D.N.Y. Apr. 2, 1999) (McKenna, J.) (same); United
States v. Victor Castro, slip op. at 5, No. S 94 Cr. 809 (Keenan,
J.) (S.D.N.Y. Jan. 5, 1995) (Rule 404(b) notice one week before
trial); United States v. Greo, 1994 WL 202605, at *2 (S.D.N.Y.
May 23, 1994) (Keenan, J.) (ten working days' notice of any Rule
404(b) evidence regarding defendant's prior drug trafficking
conduct); United States v. Richardson, 837 F. Supp. 570, 575
(S.D.N.Y. 1993) (CSH) (Rule 404(b) notice at least ten days
before trial); United States v. Spann, 1992 WL 47376, at *2
(S.D.N.Y. Mar. 5, 1992) (Keenan, J.) (Rule 404(b) evidence two
days before trial satisfies requirements of rule).

　　　　For these reasons, the Government respectfully submits
that the defendant's motion is premature and that Rule 404(b)
notice ten days prior to the trial date is a reasonable timetable
and should be adopted by the Court.

### C.   Additional Discovery Requests

　　　　Anne Hall also requests that the Government produce
Rule 16 materials and variety of supplemental discovery,
including a witness list, exhibit list, list of anyone the
Government has interviewed, 3500 material, as well as statements
by witnesses the Government does not expect to call at trial.
These requests should be denied.

41

As noted above, the Government has already produced to the defendant all Rule 16 material in its possession, custody, and control, and has offered for inspection those items which were not produced in hard copy.  Moreover, the Government is aware of and will comply with its continuing obligation to provide such material that comes into its possession.  To the extent that Anne Hall requests information outside the scope of Rule 16, for example, a witnesses list, an exhibit list, or 3500 material, she has not offered any specific basis for expedited disclosure.  To the extent she requests a list of everyone interviewed by the Government as well as statements by non-testifying witnesses, the Government has no obligation to turn over such information and Anne Hall has not offered any basis for her request beyond generalized statements.  See AH Mot. at 24-25. Accordingly, these requests should be denied.

42

## CONCLUSION

For the foregoing reasons, the defendants' pretrial motions should be denied, except that the Court should reserve decision on Clyde Hall's motion to suppress based on attorney-client privilege.

Dated:    New York, New York
          March 3, 2008

                    Respectfully submitted,

                    MICHAEL J. GARCIA
                    United States Attorney

               By: _____
                    THOMAS G. A. BROWN
                    Assistant United States Attorney
                    Tel. No.: (212) 637-2194

43

CERTIFICATION OF SERVICE

     I hereby certify that a copy of the Government's Memorandum of Law in Opposition to defendants' Omnibus Pretrial Motions filed in this matter was served on:

          Lee Ginsberg, Esq.
          Freeman, Nooter & Ginsberg
          30 Vesey Street, Suite 100
          New York, New York 10007

          James A. Cohen, Esq.
          Lincoln Square Legal Services, Inc.
          33 West 60th Street, 3rd Floor
          New York, New York 10023

by Federal Express on the 3rd day of March, 2008.

THOMAS G. A. BROWN
Assistant U.S. Attorney